IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Case No. 1:25-cv-5413 |
| STACY THOMAS f/k/a STACY SORREL, both individually and doing business as RAPID TAX REFUNDS, LLC, RAPID TAX REFUND PROS, LLC, and RAPID REFUNDS INCOME TAX SERVICE, INC., | |
| *Defendants.* | |

## COMPLAINT

The United States of America brings this action at the request of a delegate of the

Secretary of the Treasury, and at the direction of a delegate of the Attorney General, for a

permanent injunction pursuant to 26 U.S.C. §§ 7401 and 7407 barring Stacy Thomas f/k/a Stacy

Sorrel, both individually and doing business as Rapid Tax Refunds, LLC, and Rapid Tax Refund

Pros, LLC, and Rapid Refunds Income Tax Service, Inc., from participating in the business of

preparing federal tax returns, employing any person as a federal tax return preparer, and

engaging in conduct subject to penalty under the Internal Revenue Code. For its complaint, the

United States alleges the following:

### JURISDICTION, PARTIES, AND VENUE

1.      The district court has jurisdiction pursuant to 26 U.S.C. §§ 7402(a) and 7407 and

28 U.S.C. §§ 1331, 1340, and 1345.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1396 because

1

Defendant Stacy Thomas f/k/a Stacy Sorrel ("Thomas") resides and conducts business within this district, and a substantial portion of the events giving rise to this action took place in this district.

3.      On information and belief, Thomas lives in Orland Park, Illinois, within this Court's jurisdiction.

4.      Defendant Rapid Refunds Income Tax Service, Inc. ("Rapid Refunds") was an Illinois domestic business corporation that was owned and operated by Thomas. Rapid Refunds was dissolved on August 9, 2024. Its Employer Identification Number ("EIN") was XX-XXX4727.

5.      Rapid Refunds had two locations: 900 East 162nd Street, Suite 202, South Holland, Illinois, 60473 and 8032 South Kedzie Avenue, Chicago, Illinois 60652. Rapid Refunds used to have another location at 1669 Sibley Boulevard, Calumet City, Illinois 60409, but that location was closed in 2020-2021. During a May 2023 interview with the IRS, Thomas asserted that she planned to dissolve Rapid Refunds on the advice of counsel.

6.      During her interview with the IRS, Thomas said she is the 100% owner of Rapid Tax Refunds, LLC ("Rapid Tax"), which Thomas asserts was created in late 2022 or early 2023 as a continuation of Rapid Refunds. Thomas said that her attorney advised her to reorganize Rapid Refunds as an LLC filing a Schedule C to take advantage of tax benefits. Rapid Tax has an EIN of XX-XXX4696. As of the filing of this complaint, the Illinois Secretary of State does not show any corporate entity with the name Rapid Tax Refunds.

7.      Thomas filed Articles of Incorporation with the Illinois Secretary of State for Rapid Tax Refund Pros LLC ("Refund Pros"). However, this entity was involuntarily dissolved on August 9, 2024.

**DEFENDANTS' TAX RETURN PREPARATION ACTIVITIES**

8.      Thomas is a paid return preparer who prepares and electronically files federal individual and business income tax returns for customers located in and around the metropolitan Chicago area.

9.      Thomas has been preparing federal income tax returns since approximately 2010.

10.     Rapid Refunds and Rapid Tax were assigned Electronic Filing Identification Numbers ("EFINs") by the IRS. An EFIN is required for a tax return preparer to be able to file returns electronically.

11.     Thomas is listed as the principal for the applications that led to EFINs for both businesses. The IRS suspended Thomas's EFINs due to unpaid tax debts and no installment agreement in place. When interviewed by the IRS, Thomas stated that for the 2023 filing season (processing year 2024) she used an EFIN used by Annie Smith and an EFIN used by Brandi Moore of Tax Pro Solutions.

12.     Thomas also has a Preparer Tax Identification Number (PTIN) that she affixes to every return that she prepares. A PTIN is required for any tax return preparer who is compensated for preparing returns.

13.     Rapid Refunds' EIN was listed on nearly 4000 returns during processing years 2020-2024. Nearly all of these returns claimed refunds, as shown in the chart below:

| Processing Year | Number of Returns | Number of Refund Returns | Percentage of Refund Returns |
|---|---|---|---|
| **2020** | 1156 | 1113 | 96% |
| **2021** | 1176 | 1137 | 97% |
| **2022** | 1028 | 1007 | 98% |
| **2023** | 606 | 591 | 98% |
| **2024** | 1 | 1 | 100% |

3

14.     Rapid Tax's EIN was listed on over 900 returns for processing years 2023 and 2024. The vast majority of these returns claimed refunds, as shown in this chart:

| Processing Year | Number of Returns | Number of Refund Returns | Percentage of Refund Returns |
|---|---|---|---|
| 2023 | 473 | 441 | 93% |
| 2024 | 433 | 373 | 86% |

15.     Thomas prepared the following returns using her PTIN for processing years 2022-2024. The vast majority of these returns claimed refunds, as shown in this chart:

| Processing Year | Number of Returns | Number of Refund Returns | Percentage of Refund Returns |
|---|---|---|---|
| 2022 | 346 | 339 | 97% |
| 2023 | 400 | 381 | 95% |
| 2024 | 300 | 241 | 80% |

16.     During her interview with the IRS, Thomas alleged that she has had eight employees. However, data shows that 18 preparers, including Thomas, have prepared tax returns using Rapid Refunds' EIN during the 2021 through 2024 processing years. According to Thomas, Rapid Refunds has been unable to afford to hire administrative or support staff since 2018 and has only had return preparers as employees.

17.     Thomas also submitted her own Forms 1040 for tax years 2015-2018 with falsified information in order to receive refunds to which she was not entitled. Thomas' 1040 tax returns were audited for the 2015, 2016, 2017 and 2018 tax years. These audits resulted in the following assessments:

|  | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Tax | $2,533 | $6,679 | $4,137 | $2,432 |
| Penalties | $507 | $1,336 | $827 | $486 |
| Total | $3,040 | $8,015 | $4,964 | $2,918 |

4

18.     Additionally, the IRS audited Rapid Refunds' 2016 and 2017 tax returns. These audits resulted in the following assessments:

|  | 2016 | 2017 |
|---|---|---|
| Tax | $11,182 | $38,573 |
| Penalties | $2,236 | $7,915 |
| Total | $13,418 | $47,488 |

The audits determined that Rapid Refunds' gross receipts were understated by $165,010 and $199,304 for the 2016 and 2017 tax years, respectively.

19.     On information and belief, Thomas, Rapid Refunds, and Rapid Tax obtain their tax preparation business through customer referrals.

**THE IRS INVESTIGATION**

20.     At least nine times since 2010, the IRS sent communications to Thomas to remind her of her due diligence obligations as a federal tax return preparer.

21.     On January 22, 2021, the IRS assessed $27,540 in due diligence preparer penalties against Thomas pursuant to I.R.C. §6695(g) based on results of a Fiscal Year 2018 due diligence visitation.

22.     By letter dated April 7, 2023, IRS Revenue Agent Andrew Holmes advised Thomas that she was under investigation for possible involvement in tax avoidance transactions or improper tax return preparation practices.

23.     Agent Holmes interviewed Thomas over the phone on May 9, 2023, and explained to Thomas that the investigation was to determine whether tax return preparer penalties under the Internal Revenue Code might apply. Agent Holmes also explained to Thomas that there was a possibility that the government might seek an injunction against her that would bar her from preparing federal tax returns for others.

24.     As part of the IRS's investigation, the IRS contacted 86 taxpayers who claimed

5

Residential Energy Credits or Schedule C expenses and whose returns were prepared by Rapid Refunds, Rapid Tax, and/or Thomas. The IRS then interviewed 25 of those customers who responded.

## THOMAS'S SCHEMES

25.     The IRS investigation uncovered evidence that Thomas prepares tax returns that understate her customers' tax liabilities and claim excessive refunds by fabricating certain expenses and deductions, which Thomas reports on her customers' returns without their knowledge.

26.     Based on the results of the IRS investigation, Thomas's schemes include (1) fictitious residential energy credits, (2) fictitious or inflated Schedule C business expenses, and (3) exaggerated or completely fabricated Schedule A itemized deductions for charitable deductions.

27.     The chart below shows the percentage of returns filed by Rapid Refunds for processing years 2020 through 2023 that claim tax benefits that are at the heart of these three schemes:

| Processing Year (PY) | Total Number of Returns | % of Returns with Residential Energy Credits | % of Returns with Schedule C | % of Returns with Schedule A – Charitable Contributions |
|---|---|---|---|---|
| 2020 | 1,156 | 56% | 36% | 6% |
| 2021 | 1,176 | 56% | 29% | 4% |
| 2022 | 1028 | 59% | 26% | 7% |
| 2023 | 606 | 57% | 28% | 7% |

28.     The chart below shows the percentage of returns filed by Rapid Tax for processing years 2023 and 2024 that claim tax benefits that are at the heart of these three schemes:

| Processing Year (PY) | Total Number of Returns | % of Returns with Residential Energy Credits | % of Returns with Schedule C | % of Returns with Schedule A – Charitable Contributions |
|---|---|---|---|---|
| 2023 | 473 | 65% | 26% | 7% |
| 2024 | 433 | 3% | 26% | 45% |

***Residential Energy Credit Scheme***

29.     The Residential Energy Efficient Property Credit allows for a taxpayer to receive tax credits if the taxpayer makes energy-saving improvements to their principal residence during the taxable year.

30.     Thomas falsifies solar electric costs, geothermal heat pump costs, and other energy efficiency costs reported on her customers' Forms 5695, Residential Energy Credits, to generate a Residential Energy Credit that the customer is not entitled to or to generate a larger Residential Energy Credit (the "Residential Energy Credit Scheme").

31.     Customer 1[1] had her individual 2021 and 2022 returns prepared at Rapid Refunds. The 2021 return reported that she was entitled to a refund of $2,109. A Rapid Refunds' employee included with the 2021 return of Customer 1 a Form 5695. The Form 5695 showed a $2,455 credit carryforward from 2020. Customer 1's 2020 return did not include a Form 5695 or any residential energy credit. The 2022 return reported that she was entitled to a refund of $2,569. A

---

[1] To protect the identities of individual customers, the complaint refers to customers by number. A customer key, which identifies each customer by name, will be served upon Ms. Thomas with the summons and a copy of the complaint.

Rapid Refunds' employee included with the 2022 return of Customer 1 a Form 5695. The Form 5695 showed a $4,944 credit carryforward from 2021. Customer 1's 2021 return, which was prepared by Rapid Refunds, did not include a $4,944 credit carryforward. Customer 1 did not provide any information to Rapid Refunds for any residential energy credits. Indeed, Customer 1 did not own her residence and therefore could not qualify for these credits. Customer 1 was not aware that her 2021 return claimed a $2,455 residential energy credit or that her 2022 return claimed a $4,944 residential energy credit. These fake Forms 5695 artificially generated her refunds.

32. Customer 2 had his individual 2020, 2021, and 2022 returns prepared by Thomas at Rapid Refunds. The 2020 return reported that he was entitled to a refund of $3,216. Thomas included with the 2020 return of Customer 2 a Form 5695. The Form 5695 showed entitlement to a $2,084 residential energy credit. The 2021 return reported that he was entitled to a refund of $3,711. The Form 5695 showed a $2,084 credit carryforward from 2020 and claimed entitlement to a $2,603 residential energy credit. Customer 2's 2020 return, which had been prepared by Thomas, did not include any residential energy credit carryforward. The 2022 return reported that Customer 2 was entitled to a refund of $3,849. Thomas included with the 2022 return of Customer 2 a Form 5695. The Form 5695 showed a $2,603 credit carryforward from 2021 and claimed entitlement to a $2,858 residential energy credit. Customer 2 did not provide any information to Thomas for any residential energy credits. Customer 2 was not aware that his returns claimed residential energy credits. These fake Forms 5695 artificially inflated his refunds.

33. Customer 3 had his individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that he was entitled to a refund of $10,251. Thomas included with the

2022 return of Customer 3 a Form 5695. The Form 5695 showed costs of $2,561 for qualified solar electric property, $7,404 for qualified small wind energy property, and $9,965 for qualified biomass fuel property. The Form 5695 showed a $9,917 credit carryforward from 2021 and entitlement to a $12,907 residential energy credit. Customer 3's 2021 return did not include any residential energy credit carryforward. Customer 3 provided Thomas with receipts for two new doors, a couple of windows, and a new water heater he had installed in 2022. Customer 3 did not provide Thomas with any information for solar electric property or small wind energy property, and he never purchased solar electric or small wind energy property. Customer 3 was not aware that his 2022 return claimed $2,561 in solar electric, $7,404 in small wind, and $9,965 for biomass fuel energy costs. This fake Form 5695 artificially generated his refund.

34.     Customer 4 had his individual 2019 return prepared by Thomas at Rapid Refunds. The 2019 return reported that he was entitled to a refund of $18,032. Thomas included with the 2019 return of Customer 4 a Form 5695. The Form 5695 showed costs of $23,766 for qualified solar electric property. The Form 5695 showed a $5,178 credit carryforward from 2018 and entitlement to a $12,308 residential energy credit. Customer 4's 2018 return did not include any residential energy credit carryforward. Customer 4 installed solar panels on his home in 2019. Customer 4 also had his individual 2020 return prepared by Thomas at Rapid Refunds. The 2020 return reported that he was entitled to a refund of $14,108. Thomas included with the 2020 return of Customer 4 a Form 5695. The Form 5695 showed costs of $14,182 for qualified solar electric property, but Customer 4 installed solar panels on his home in 2019, not 2020. The Form 5695 showed a $17,308 credit carryforward from 2019 and entitlement to a $20,995 residential energy credit. Customer 4's 2019 return did not include any residential energy credit carryforward. Customer 4 also had his individual 2022 return prepared by Thomas at Rapid Refunds. The 2022

9

return reported that he was entitled to a refund of $16,074. Thomas included with the 2022 return of Customer 4 a Form 5695. The Form 5695 showed costs of $9,030 for qualified solar electric property, $5,911 for qualified small wind energy property, and $14,941 for qualified biomass fuel property. The Form 5695 showed entitlement to a $4,482 residential energy credit. Customer 4 did not provide Thomas with any information for small wind energy property or for solar electric property in 2022, and he never purchased small wind energy property. Customer 4 was not aware that his return claimed any residential energy credit for 2022. These fake Forms 5695 artificially inflated his refunds.

35.     Customer 5 had her individual 2020 return prepared by Thomas at Rapid Refunds. The 2020 return reported that she was entitled to a refund of $3,310. Thomas included with the 2020 return of Customer 5 a Form 5695. The Form 5695 showed a $2,350 credit carryforward from 2019 and entitlement to a $2,350 residential energy credit. Customer 5 also had her individual 2021 return prepared by Thomas at Rapid Refunds. The 2021 return reported that she was entitled to a refund of $4,132. Thomas included with the 2021 return of Customer 5 a Form 5695. The Form 5695 showed costs of $1,708 for qualified solar electric property, $2,015 for solar water heating property, and $3,723 for biomass fuel property. The Form 5695 showed a $4,112 credit carryforward from 2020 and entitlement to a $5,080 residential energy credit. Customer 5's 2020 return did not include any residential energy credit carryforward. Customer 5 also had her individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $2,552. Thomas included with the 2022 return of Customer 5 a Form 5695. The Form 5695 showed a $4,080 credit carryforward from 2021 and entitlement to a $3,956 residential energy credit. Customer 5 does not own her residence but rents it and therefore could not qualify for these credits. Customer 5 did not provide Thomas

10

with any information for solar electric property, solar water heating property, or biomass fuel property. Customer 5 does not know why these amounts were included on her return. These fake Forms 5695 artificially generated or inflated her refunds.

36.     Customer 6 had her individual 2019 return prepared by an employee at Rapid Refunds. The 2019 return reported that she was entitled to a refund of $4,099. Customer 6's 2019 return included a Form 5695. The Form 5695 showed a $3,654 credit carryforward from 2018 and entitlement to a $3,625 residential energy credit. Customer 6 also had her individual 2020 return prepared by an employee at Rapid Refunds. The 2020 return reported that she was entitled to a refund of $2,720. Customer 6's 2020 return included a Form 5695. The Form 5695 showed a $3,621 credit carryforward from 2019 and entitlement to a $2,416 residential energy credit. Customer 6's 2019 return did not include any residential energy credit carryforward. Customer 6 also had her individual 2021 return prepared by an employee at Rapid Refunds. The 2021 return reported that she was entitled to a refund of $1,862. Customer 6's 2021 return included a Form 5695. The Form 5695 showed a $3,905 credit carryforward from 2020 and entitlement to a $3,905 residential energy credit. Customer 6's 2020 return did not include any residential energy credit carryforward. Customer 6 also had her individual 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $4,245. Customer 6's 2022 return included a Form 5695. The Form 5695 showed a $3,652 credit carryforward from 2021 and entitlement to a $2,930 residential energy credit. Customer 6's 2021 return did not include any residential energy credit carryforward. Customer 6 owns a 3-unit residence and lives in one of the units, while the other two are offered for rent. Customer 6 said that she did not install any solar powered property on the residence. These fake Forms 5695 artificially generated or inflated her refunds.

11

37.     Customer 7 had her individual 2020 return prepared by an employee at Rapid Refunds. The 2020 return reported that she was entitled to a refund of $5,117. Customer 7's 2020 return included a Form 5695. The Form 5695 showed a $1,450 credit carryforward from 2019 and entitlement to a $1,450 residential energy credit. Customer 7 also had her individual 2021 return prepared by an employee at Rapid Refunds. The 2021 return reported that she was entitled to a refund of $2,791. Customer 7's 2021 return included a Form 5695. The Form 5695 showed a $2,942 credit carryforward from 2020 and entitlement to a $2,942 residential energy credit. Customer 7's 2020 return did not include any residential energy credit carryforward. Customer 7 also had her individual 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $3,017. Customer 7's 2022 return included a Form 5695. The Form 5695 showed a $4,721 credit carryforward from 2021 and entitlement to a $4,721 residential energy credit. Customer 7's 2021 return did not include any residential energy credit carryforward. Customer 7 owns her residence but has not installed any solar equipment in her residence. Customer 7 was not aware that her returns included the incorrect residential energy credits. These fake Forms 5695 artificially generated or inflated her refunds.

38.     Customer 8 had his individual 2021 return prepared by Thomas at Rapid Refunds. The 2021 return reported that he was entitled to a refund of $7,392. Thomas included with the 2021 return of Customer 8 a Form 5695. The Form 5695 showed costs of $4,855 for qualified solar electric property, $2,790 for solar water hearing property, $3,316 for small wind energy property, and $10,691 for biomass fuel property. The Form 5695 showed a $3,039 credit carryforward from 2020 and entitlement to a $5,889 residential energy credit. Customer 8's 2020 return did not include any residential energy credit carryforward. Customer 8 also had his

12

individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that he was entitled to a refund of $8,453. Thomas included with the 2022 return of Customer 8 a Form 5695. The Form 5695 showed costs of $2,305 for qualified solar electric property, $4,219 for small wind energy property, and $6,524 for biomass fuel property. The Form 5695 showed a $5,889 credit carryforward from 2021 and entitlement to a $7,846 residential energy credit. Customer 8's 2021 return did not include any residential energy credit carryforward. Customer 8 purchased his residence in 2018. Customer 8 discussed residential energy credits with Thomas. Customer 8 purchased and installed new windows on the main floor of his home in 2022, which cost approximately $3,000. Customer 8 did not know if the windows qualify for residential energy credits. Customer 8 did not install any energy efficient property in any year prior to 2022. Customer 8 has never installed solar electric, solar water heating, small wind energy property, or biomass fuel property at his residence and never told Thomas that he installed them at his residence. Customer 8 was not aware that Thomas included solar electric property costs, small wind energy property costs, solar water heating property costs, or biomass fuel property costs on his returns. Customer 8 was not aware that Thomas included improper energy credit carryforwards on his returns. These fake Forms 5695 artificially generated or inflated his refunds.

39.     Customers 9 and 10 had their joint 2019 return prepared by an employee at Rapid Refunds. The 2019 return reported that they were entitled to a refund of $5,488. Customer 9 and 10's 2019 return included a Form 5695. The Form 5695 showed a $3,145 credit carryforward from 2018 and entitlement to a $3,087 residential energy credit. Customer 9 and 10's 2018 return did not include any residential energy credit carryforward. Customers 9 and 10 also had their 2020 return prepared by an employee at Rapid Refunds. The 2020 return reported that they were

13

entitled to a refund of $1,744. Customer 9 and 10's 2020 return included a Form 5695. The Form 5695 showed a $3,971 credit carryforward from 2019 and entitlement to a $3,971 residential energy credit. Customers 9 and 10 also had their joint 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that they were entitled to a refund of $2,839. Customer 9 and 10's 2022 return included a Form 5695. The Form 5695 showed a $2,898 credit carryforward from 2021 and entitlement to a $2,898 residential energy credit. Customer 9 and 10's 2021 return did not include any residential energy credit carryforward or any Form 5695 at all. Customers 9 and 10 have been renting their residence since 2005 and therefore could not qualify for these credits. Customer 9 stated that she did not know why her 2022 return included a residential energy credit. These fake Forms 5695 artificially generated or inflated her refunds.

### *Schedule C Scheme*

40.    An individual who earns income from a sole proprietorship reports that income, and any expenses of the sole proprietorship, on Schedule C, "Profit or Loss From Business." The Schedule C is submitted to the IRS as an attachment to the individual's Form 1040, U.S. Individual Income Tax Return. The overall income or loss from Schedule C is reported as a line item on the individual's Form 1040. This line items raises or lowers the individual's taxable income. Fabricated or inflated Schedule C expenses can offset Schedule C or other income on the return and either lower the amount of tax that would otherwise be reported as due or increase the amount of the refund claimed.

41.    As noted above in paragraph 35, Customer 5 had her individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $2,552. Thomas included with the 2022 return of Customer 5 a Schedule C that claimed that Customer 5 had a "College Counselor" business that had $23,370 in receipts and $15,561 in

expenses, resulting in $7,809 in tentative profit. Customer 5 was employed for part of 2022 as a college counselor but stated that the only expenses she had were normal commuting expenses, notebooks, pens, items to decorate her office, and candy for the children she counseled. The Schedule C claimed $7,792 for repairs and maintenance, $1,630 for travel, and $2,484 for utilities. But Customer 5 did not incur any of these expenses, did not provide these amounts to Thomas, and did not know Thomas included these amounts on her 2002 Schedule C. These fake Schedule C expenses reduced her taxable income and artificially generated or inflated her refund.

42.     As noted above in paragraph 36, Customer 6 had her individual 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $4,245. Customer 6's 2022 return included a Schedule C that claimed that Customer 6 had a real estate business that had only $968 in receipts but $24,160 in expenses, resulting in a $23,192 loss. The Schedule C claimed $16,234 in office expense, $3,210 for repairs and maintenance, $2,647 for travel, and $2,069 for utilities. Customer 6 is a real estate agent. Customer 6 told the IRS that she pays MLS fees each year of more than $1,000. Customer 6 did not provide any information about travel expenses to Rapid Refunds. Customer 6 was not sure what the expenses claimed in her Schedule C were. These fake Schedule C expenses reduced her taxable income and artificially generated or inflated Customer 6's refund.

43.     As noted above in paragraph 37, Customer 7 had her individual 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that she was entitled to a refund of $3,017. Customer 7's 2022 return included a Schedule C that claimed that Customer 7 had a "Home Care" business that had $730 in receipts and $11,425 in expenses, resulting in a $10,695 loss. The Schedule C claimed $3,151 for advertising, $1,629 for office expense, $5,437 for supplies, and $1,208 for travel. Customer 7 was trying to get a home health care business

started in 2022. Customer 7 stated that she did not need many supplies, and both supplies and office expenses were minimal. Customer 7 stated that she did not provide the amounts for advertising, supplies, and travel, and she was not aware these deductions were on her 2022 Schedule C. These fake Schedule C expenses reduced her taxable income and artificially generated or inflated her refund.

44.     As noted above in paragraph 39, Customers 9 and 10 had their joint 2022 return prepared by an employee at Rapid Refunds. The 2022 return reported that they were entitled to a refund of $2,839. Customer 9 and 10's 2022 return included a Schedule C that claimed an auto business that had only $885 in receipts but $27,546 in expenses, resulting in a $26,661 loss. The Schedule C claimed $1,830 for advertising expense, $3,258 for office expense, $6,959 for rent or lease of vehicles, machinery, and equipment, $4,654 for repairs and maintenance, $5,977 for supplies, and $4,868 for travel. Customer 9 told the IRS that her husband works on cars on the side, in addition to his full-time W-2 job. He mostly works on cars for their friends and their friends' families when he has the time. Customer 9 told the IRS that her husband advertised on Facebook. While the Schedule C claimed $3,258 in office expenses, Customer 9 told the IRS that she purchased some supplies for her W-2 job, since she worked from home, and then her husband used some of those supplies for his business. Customer 9 also stated that her husband had to rent some equipment for jobs and purchase some oil for cars, tools, and other items. Customer 9 did not know what repairs and maintenance would have been. Customer 9 also stated that her husband never worked on cars out of town, but only at their home. Customer 9 stated that her husband went to Virginia for his W-2 job and also picked up some supplies for his Schedule C business while he was there. He only had to pay for his hotel for that trip. Customer 9 could not explain any other travel expenses. These fake Schedule C expenses reduced her

taxable income and artificially inflated Customer 9 and 10's refund.

***Charitable Deduction Scheme***

45.     Individual taxpayers who itemize deductions from adjusted gross income, instead of using the standard deduction amount, use Schedule A to report allowable deductions. Schedule A contains seven categories of allowable deductions:  medical; state and local property and sales taxes; mortgage interest; charitable deductions; casualty and theft losses; unreimbursed employee expenses; and miscellaneous. The total amount of deductions reported on Schedule A is reported as a line item on the individual's income tax return (Form 1040), and Schedule A is submitted to the IRS as an attachment to the Form 1040.

46.     Thomas also prepares tax returns for her clients that have had fabricated or inflated or made-up Schedule A cash and non-cash charitable contribution deductions. These are deductions that her clients did not ask her to include on their returns and for which the clients did not provide supporting documentation. These false deductions have reduced Thomas's customers' taxable incomes and inflated their refunds.

47.     As noted above in paragraph 33, Customer 3 had his individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that he was entitled to a refund of $10,251. Thomas included with the 2022 return of Customer 3 a Schedule A. The Schedule A showed $10,890 in gifts by cash or check to charity. Customer 3 did not provide Thomas with any information for charitable contributions, other than the amounts he had taken out of his paycheck for donations to United Way. Customer 3, at most, donated $50 per paycheck out of his twice monthly paychecks to United Way. Customer 3 did not tell Thomas that he made cash or check donations of $10,890 in 2022 and did not know that this deduction was on his 2022 return. These fake charitable contributions reduced his taxable income and artificially inflated his

17

refund.

48.     As noted in above in paragraph 38, Customer 8 had his individual 2022 return prepared by Thomas at Rapid Refunds. The 2022 return reported that he was entitled to a refund of $8,453. Thomas included with the 2022 return of Customer 8 a Schedule A. The Schedule A showed $10,700 in gifts by cash or check to charity. Customer 8 expressly told Thomas he did not make any cash or check contributions. Customer 8 was not aware that Thomas included $10,700 of cash or check contributions on his 2002 Schedule A. These fake charitable contributions reduced his taxable income and artificially inflated his refund.

## HARM TO THE UNITED STATES

49.     The false and fraudulent returns prepared and filed by Thomas have caused and continue to cause substantial harm to the Government by improperly reducing her customers' reported tax liabilities, helping them to obtain refunds to which they are not entitled and obstructing the IRS's efforts to administer the federal tax laws.

50.     Thomas has essentially stolen from the United States Treasury, causing significant damage to the fisc. For processing years 2020 through 2024, the IRS audited 191 returns prepared by Thomas, Rapid Refunds, Rapid Tax, or Refund Pros, with a total deficiency of $965,553, or $5,045 per return.

51.     For processing years 2020 through 2024, the IRS estimates a total tax loss of at least $12,990,875. This figure is based on the average deficiency of $5,045 found on returns reviewed in the IRS's investigation, multiplied by the number of returns prepared by Rapid Refunds, Rapid Tax, and/or Thomas that contain residential energy credits (2,575).

52.     Beyond the tax loss, the United States is also harmed because the IRS must

devote some of its limited resources to investigating Thomas's conduct as a tax return preparer, detecting and examining inaccurate and fraudulent returns filed by Thomas, and attempting to collect from her customers unpaid taxes and penalties (some of which may not be collectible by the time the IRS learns of the deficiencies).

53.     Thomas's customers have been harmed because they have paid Thomas to prepare tax returns, and now they may be liable for sizable penalties and interest as a result of underpaying their tax.

54.     Thomas's illegal conduct also has caused harm to honest tax return preparers because by preparing returns that falsely or fraudulently reduce his customers' liabilities and generate or inflate their refunds, Thomas has gained an unfair competitive advantage over other tax return preparers who have not done so and who, as a result, may have had fewer customers.

55.     Finally, in addition to the direct monetary and administrative harm caused by Thomas's preparing returns that have understated her customers' tax liabilities, Thomas's illegal activities have undermined public confidence in the administration of the federal tax system and encouraged noncompliance with the internal revenue laws.

**COUNT I: Injunction Under 26 U.S.C. § 7407 For Violation of 26 U.S.C. §§ 6694**

56.     The United States incorporates by reference the allegations contained in paragraphs 1 through 55.

57.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from specified misconduct (which is described in I.R.C. § 6694) or other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws if the court finds that the preparer has engaged in such conduct and

injunctive relief is appropriate to prevent the recurrence of such conduct.

58.     I.R.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation or who employs one or more persons to prepare for compensation, any tax return, or a substantial portion thereof.

59.     I.R.C. § 6694(a) provides that a tax return preparer is subject to penalty if he or she prepares a return or claim for refund understating a customer's tax liability based on: (1) a position for which there is no substantial authority; (2) the preparer knew or reasonably should have known of such position; and (3) the position was not properly disclosed.

60.     I.R.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim for refund with an understatement of liability: (1) in a willful attempt to understate the liability for tax on the return or claim; or (2) due to a reckless or intentional disregard of internal revenue rules or regulations.

61.     I.R.C. § 6694(c) defines "understatement of liability," as used in §§ 6694(a) and (b) to include "any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax."

62.     Thomas is a tax return preparer within the meaning of section 7701(a)(36).

63.     Thomas is subject to penalty under I.R.C. § 6694(a) because she willfully prepared tax returns for customers that she knew contained false deductions, losses, credits, and expenses. Thomas knew that these false deductions, losses, credits, and expenses would understate her customers' tax liabilities, and knew there was no substantial authority or reasonable basis for the falsely reported items.

64.     Thomas is subject to penalty under I.R.C. § 6694(b) because she knew or should

20

have known that the returns she prepared for customers contained false charitable contributions, false Schedule C expenses, and false Form 5695 Residential Energy Credits for which she could not have reasonably believed that the position would more likely than not be sustained on the merits. Thomas fabricated these claims and their supporting documentation.

65.     If the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court finds that a narrower injunction (i.e., prohibiting only specific enumerated conduct) would be insufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from acting as a federal tax return preparer.

66.     Anything less than a permanent and complete bar on the preparation of tax returns is unlikely to stop Thomas from preparing fraudulent tax returns. Not only is it the pattern and practice of Thomas to file or have her hired return preparers file fraudulent returns, but she has shown flagrant disregard for the internal revenue laws and the IRS's attempts to enforce these laws, since she has continued her fraudulent activities despite receiving notice of IRS investigations into her fraudulent activity and even penalties assessed for that activity. Thomas's long record of deceit, fraud, and lack of remorse shows there is a high likelihood that she will continue her schemes if she is merely barred from filing improper returns.

### COUNT II: Injunction Under 26 U.S.C. § 7402(a) for Unlawful Interference with the Enforcement of the Internal Revenue Laws and Appropriateness of Injunctive Relief

67.     The United States incorporates by reference the allegations contained in paragraphs 1 through 66.

68.     I.R.C. §7402(a) authorizes a district court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United

21

States has other remedies available for enforcing those laws, because I.R.C. § 7402(a) expressly states that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

69.     Thomas's activities described above substantially interfere with the enforcement of the internal revenue laws because her preparation and filing of numerous fraudulent tax returns result in customers not paying their true federal tax liabilities and receiving tax refunds to which they are not entitled.

70.     Thomas's conduct has caused substantial tax losses to the United States Treasury, much of which will be undiscovered and unrecoverable. Unless she is enjoined from preparing returns, these losses will continue, and the IRS may have to devote substantial resources to detecting understated liabilities and overstated refund claims stemming from fabricated and inflated Residential Energy Credit claims, Schedule C expenses, and Schedule A itemized deductions for charitable contributions. This would be a significant burden on IRS resources and would prevent the IRS from undertaking other important tax administration and enforcement actions.

71.     Thomas's conduct also substantially interferes with the enforcement of the internal revenue laws because it undermines public confidence in tax administration and takes business away from honest tax return preparers.

72.     An injunction prohibiting Thomas from preparing or assisting in the preparation of tax returns is needed to stop her from preparing or filing fraudulent tax returns and to prohibit her from otherwise interfering with the proper administration and enforcement of the internal revenue laws now and in the future.

73.     Given the continued nature of Thomas's misconduct despite the IRS

investigations and assessments described above, unless enjoined by this Court, Thomas is likely to continue to engage in illegal conduct in the future.

74. While the United States will suffer substantial, irreparable injury, as described above, if Thomas is not enjoined, she will not be harmed by being enjoined as a tax return preparer given that, when acting as a tax return preparer, she prepares false returns that harm the United States.

75. The public interest would be advanced by enjoining Thomas. An injunction will stop her illegal conduct and the harm that her conduct is causing the United States Treasury and the public.

76. An injunction under I.R.C. § 7402 is necessary and appropriate, and the United States is entitled to injunctive relief under I.R.C. § 7402. The injunction, as detailed below, should bar Thomas  and anyone acting in concert with her, from preparing or filing tax returns for others, representing customers before the IRS, and from otherwise engaging in conduct that interferes with the proper administration of the internal revenue laws.

**WHEREFORE**, the United States seeks the following relief:

A. That the Court find that Stacy Thomas has continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6694; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty would be insufficient to prevent Stacy Thomas's interference with the proper administration of the tax laws; and that Stacy Thomas should be permanently enjoined from acting as a tax return preparer;

B. That the Court find that Thomas has interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a) under the Court's inherent equity powers;

C.     That this Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter a permanent injunction enjoining Stacy Thomas, her officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with her, from directly or indirectly:

1. Preparing, filing, or directing or assisting in the preparation or filing of federal tax returns, amended returns or other related documents and forms for others;

2. Owning, managing, controlling, working for, assisting, or volunteering for any business or entity engaged in tax return preparation;

3. Using, maintaining, renewing, obtaining, transferring, selling, assigning, or applying for a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

4. Using any EFIN, PTIN, Employer Identification Number (EIN), Taxpayer Identification Number social security number (SSN), or any other federally issued identification number that belongs to another person(s) to file or remit federal income tax returns;

5. Engaging in any conduct subject to penalty under 26 U.S.C. § 6694;

6. Advising, counseling, or instructing anyone about the preparation or filing of a federal tax return, amended tax return, or other related document;

7. Advertising tax return preparation services through any medium, including print, online, and social media;

8. Representing any other person in connection with any matter before the IRS;

9. Employing any person to work as a federal tax return preparer to prepare returns for someone other than Thomas or an entity that she owns or controls;

10. Facilitating in any manner the work of any person or entity that is in the business

of preparing or filing federal tax documents or forms for others, or representing persons before the IRS, including by providing office space, equipment, or services;

11. Referring any person to a tax preparation firm or tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

12. Selling, transferring, or providing to any person some or all of the proprietary assets that defendants have generated by their tax return preparation activities, including but not limited to their customer list; and

13. Engaging in any other conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

D.      That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Stacy Thomas to prominently post a copy of this order of permanent injunction (with dimensions of at least 12 by 24 inches) at all physical locations where Stacy Thomas conducts any type of business and requiring Stacy Thomas to prominently post an electronic copy of the permanent injunction on any website or social media site or social media profile that Stacy Thomas or any entity that she owns or controls maintains or creates over the next five years, excluding social media that is entirely personal in nature;

E.      That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Stacy Thomas to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) all persons for whom Stacy Thomas, Rapid Refunds Income Tax Service, Rapid Tax Refunds, LLC, or Rapid Tax Refund Pros LLC prepared federal tax returns or claims

for a refund, for tax years beginning in 2020 and continuing through this litigation;

F.      That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Stacy Thomas, within 30 days of receiving the Court's order, to contact by email, if an email address is known, or otherwise by U.S. mail, all persons for whom Stacy Thomas, Rapid Refunds Income Tax Service, Inc., Rapid Tax Refunds, LLC, or Rapid Tax Refund Pros LLC has prepared federal tax returns, amended tax returns, or claims for refund since January 2020, as well as all employees or independent contractors Stacy Thomas, Rapid Refunds Income Tax Service, Inc., Rapid Tax Refunds, LLC, or Rapid Tax Refund Pros LLC has had since January 2020, and to inform them of the permanent injunction entered against Stacy Thomas by sending each of them a copy of the order of permanent injunction, with no other text, enclosures, or attachments unless approved in writing by the Department of Justice;

G.      That the Court, pursuant to I.R.C. § 7402(a), enter an order requiring Stacy Thomas, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that Stacy Thomas has received a copy of the Court's order and are in compliance with the terms described in Paragraphs C-F of this Complaint;

H.      That this Court permit the United States to conduct post-judgment discovery to ensure Stacy Thomas's compliance with the permanent injunction;

I.      That this Court retain jurisdiction over Stacy Thomas to enforce any injunction entered against them; and

J.      That this Court grant the United States such other and further relief as the Court

deems appropriate.

                                        /s/ Kimberly R. Parke
                                        KIMBERLY R. PARKE
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice
                                        P.O. Box 55
                                        Washington, D.C. 20044
                                        202-353-0300 (v)
                                        202-514-5238(f)
                                        Kimberly.Parke@usdoj.gov

LOCAL COUNSEL:

Andrew S. Boutros
United States Attorney
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(312) 353-5300